UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

FILED - KZ

06 JUL 28 AM 10: 47

RONALD WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT MICH.
BY:___/s/___

RICHARD ROY VENDEVILLE,
Prison number: 206993,
Standish Maximum Correctional Facility,

                                     Petitioner,

vs.

Hon. ~~Gordon J. Quist~~
~~U.S. District Judge~~
Hugh W. Brenneman, Jr.
U.S. Magistrate Judge
Docket Number:

THOMAS BIRKETT, Warden,
Standish Maximum Correctional Facility,

                                       Respondent.

4:06CV0089

Attorney General of the State of Michigan: Mike Cox.

## PETITION FOR A WRIT OF HABEAS CORPUS

Richard Roy Vendeville, (206993)
Standish Maximum Correctional Facility
4713 West M-61
Standish, Michigan 48658

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RICHARD ROY VENDEVILLE,
Prison number: 206993,
Standish Maximum Correctional Facility,

                              Petitioner,

                                         Honorable: _____

vs.

                                         Docket Number: _____

THOMAS BIRKETT, Warden,
Standish Maximum Correctional Facility,
                              Respondent.
_____/

Attorney General of the State of Michigan: Mike Cox.
_____/

## PETITION FOR A WRIT OF HABEAS CORPUS

    1. Name and location of court which entered the judgment of conviction under attack? Kalamazoo County Circuit Court, 227 West Michigan Avenue, Kalamazoo, Michigan 49007.

    2. Date of judgment of conviction? April 10, 2003.

    3. Length of sentence? 20 to 40 years.

    4. Nature of offense involved? First Degree Home Invasion and Third Felony Offender.

    5. What was your plea? Not guilty.

    6. If you pleaded not guilty, what kind of trial did you have? Jury trial.

    7. Did you testify at trial? Yes.

    8. Did you file a direct appeal from the judgment of conviction? Yes.

9. If you did appeal, answer the following:

(a) Date you filed? January 27, 2004.

(b) Name of court? Michigan Court of Appeals.

(c) Result? Affirmed conviction.

(d) Date of result and case number? November 9, 2004. <u>People v Vendeville</u>, ___ Mich App ___, docket number: 248161.

(e) Grounds raised?

### ISSUE I

THE TRIAL JUDGE DENIED DEFENDANT HIS RIGHT TO DUE PROCESS AND THE PRESUMPTION OF INNOCENCE BY REQUIRING HIM TO BE TRIED IN SHACKLES THAT WERE VISIBLE TO THE JURY DESPITE THE JUDGE'S CONCLUSION THAT THE DEFENDANT'S COURTROOM BEHAVIOR WAS NOT A PROBLEM, AND DESPITE A PAUCITY OF EVIDENCE THAT HE WAS A TRUE ESCAPE RISK OR INJURY THREAT.

### ISSUE II

DEFENDANT COUNSEL DID NOT OPEN THE DOOR TO EVIDENCE THAT DEFENDANT CONFESSED TO OTHER CRIMES BY SIMPLY ASKING WHY THE OFFICER DID NOT RECORD DEFENDANT'S STATEMENT. THE TRIAL JUDGE'S DECISION TO ADMIT THE OTHER-ACTS EVIDENCE ON AN OPEN-DOOR THEORY WAS AN ABUSE OF DISCRETION THAT DEPRIVED DEFENDANT OF A FAIR TRIAL.

### ISSUE III

BECAUSE THE RECENTLY ENACTED LAW ABOLISHED VOLUNTARY INTOXICATION AS A DEFENSE TO SPECIFIC-INTENT CRIMES APPLIES ONLY TO CRIMES COMMITTED ON OR AFTER SEPTEMBER 1, 2002, IT DID NOT APPLY TO THE CRIMES AT ISSUE HERE, WHICH OCCURRED BEFORE THAT DATE. THE TRIAL JUDGE REVERSIBLY ERRED BY INSTRUCTING THE JURY, OVER DEFENSE OBJECTION, THAT THE NEW LAW APPLIED.

### ISSUE IV

BECAUSE TWO SENTENCE-GUIDELINES VARIABLE WERE MISSCORED, AND BECAUSE CORRECTING EITHER WOULD MAKE THE SENTENCE IMPOSED A GUIDELINE DEPARTURE, DEFENDANT IS ENTITLED TO RE-SENTENCING. THE ERROR IS EITHER PRESERVED, PLAIN, OR THE BASIS FOR A FINDING OF INEFFECTIVE ASSISTANCE OF COUNSEL.

(f) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Date you filed? November 9, 2004.

(2) Name of court? Michigan Supreme Court.

(3) Result? Denied.

(4) Date of result and case number? June 30, 2005. People v Vendeville, __ Mich __, docket numbers: 126006 and 127671.

(5) Grounds raised?

### ISSUE I

THE TRIAL JUDGE DENIED DEFENDANT HIS RIGHT TO DUE PROCESS AND THE PRESUMPTION OF INNOCENCE BY REQUIRING HIM TO BE TRIED IN SHACKLES THAT WERE VISIBLE TO THE JURY DESPITE THE JUDGE'S CONCLUSION THAT THE DEFENDANT'S COURTROOM BEHAVIOR WAS NOT A PROBLEM, AND DESPITE A PAUCITY OF EVIDENCE THAT HE WAS A TRUE ESCAPE RISK OR INJURY THREAT.

### ISSUE II

DEFENSE COUNSEL DID NOT OPEN THE DOOR TO EVIDENCE THAT DEFENDANT CONFESSED TO OTHER CRIMES BY SIMPLY ASKING WHY THE OFFICER DID NOT RECORD DEFENDANT'S STATEMENT. THE TRIAL JUDGE'S DECISION TO ADMIT THE OTHER-ACTS EVIDENCE ON AN OPEN-DOOR THEORY WAS AN ABUSE OF DISCRETION THAT DEPRIVE DEFENDANT OF A FAIR TRIAL.

### ISSUE III

BECAUSE THE RECENTLY ENACTED LAW ABOLISHED VOLUNTARY INTOXICATION AS A DEFENSE TO SPECIFIC-INTENT CRIMES APPLIES ONLY TO CRIMES COMMITTED ON OR AFTER SEPTEMBER 1, 2002, IT DID NOT APPLY TO THE CRIMES AT ISSUE HERE, WHICH OCCURRED BEFORE THAT DATE. THE TRIAL JUDGE REVERSIBILY ERRED BY INSTRUCTING THE JURY, OVER DEFENSE OBJECTION, THAT THE NEW LAW APPLIED.

### ISSUE IV

BECAUSE TWO SENTENCE-GUIDELINES VARIABLE WERE MISSCORED, AND BECAUSE CORRECTING EITHER WOULD MAKE THE SENTENCE IMPOSED A GUIDELINE DEPARTURE, DEFENDANT IS ENTITLED TO RE-SENTENCING. THE ERROR IS EITHER PRESERVED, PLAIN, OR THE BASIS FOR A FINDING OF INEFFECTIVE ASSISTANCE OF COUNSEL.

## ISSUE V

**THE COURT OF APPEALS COMMITTED CLEAR ERROR WHEN IT DENIED DEFENDANT TWO MOTIONS TO REMAND AND THEN PROCEEDED TO DENY APPELLATE RELIEF BASED ON AN INADEQUATE FACTUAL RECORD.**

(g) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

No certiorari was filed into the United States Supreme Court.

10. Did you file a motion for relief from judgment pursuant to Subchapter 6.500 of the Michigan Court Rules with respect to the judgment of conviction and sentence?

No.

11. If your answer to 10 was "yes," give the following information:

No motion for relief from judgment of conviction was filed.

12. Other than a direct appeal or a motion for relief from judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

No.

13. If your answer to 12 was "yes," give the following information:

See paragraph 12., <u>supra</u>.

14. (A).

## GROUND ONE

THE PETITIONER WAS DENIED A FAIR AND IMPARTIAL TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN HE STOOD TRIAL BEFORE A JURY IN HANDCUFFS, BELLY CHAINS AND LEGAL IRONS.

## SUPPORTING FACTS

At a pretrial hearing on April 3, 2003, defense counsel moved the trial court (court) to allow the Petitioner to be tried without being shackled in handcuffs, belly chains and leg irons (full shackles).

Only one witness for the prosecution team testified at this pretrial hearing regarding the Petitioner's alleged bizarre and hostile before-the-trial behavior. It was this testimony by Lieutenant Gail Sampsell (Lt. Sampsell) which would eventually lead the court to rule that the Petitioner would have to stand trial in full shackles.

Lt. Sampsell was a lieutenant at the Kalamazoo County Jail, which was a division of the Kalamazoo County Sheriff's Department. She testified to each fact from complete memory, without the use of notes, reports or memoranda, that the Petitioner:

1) Was very demanding.

2) Was a resource drain.

3) Was manipulative, destructive and violent.

4) Had taken a swing at an officer while pretending to be overdosing on medication.

-5-

5) Had resisted officers and threatened to hurt specific staff members once he was released from his handcuffs.

6) Had used profanity against jail staff.

7) Had to always be escorted by two guards and handcuffed behind his back wherever he went, even to and from the restroom.

8) Was caught hoarding small pieces of metal, which in theory, might have been used as weapons or to pick or jam a lock, and on one occasion, had used such a piece of metal to jam his handcuffs shut.

9) Had collected pieces of metal from a radiator and a phone coax at the jail.

10) Had tampered with transport vehicle door latches and collected ashtray springs and bits of metal form underneath the seats of transport vans.

11) Had asked a trustee to get him large metal staples from supply boxes.

12) Had tried to remove screws from items in the rehabilitation cell.

13) Had used the metal to jam doors.

14) Had removed items form the trustees cart.

15) Had removed a ceiling tile.

16) Had dismantled a light in the isolation area in an attempt to get metal.

17) Was seen tampering with the electricity.

Lt. Sampsell also testified:

18) That a search was conducted and pieces of metal were found sharpened down in the form of weapons.

Lt. Sampsell further testified that the Petitioner:

19) Was climbing the jail bars while making Tarsan yells, wrapping himself in urine-soaked toilet paper and placing his bodily fluids and bodily substances in areas where officers could not avoid them.

20) Was unruly, physically aggressive and out of control when being transported.

21) Had threatened to hurt himself, and on one occasion, had opened up both of his wrists to the point that he was actually puddling blood. The jail officials, therefore, considered him to be a suicide risk.

22) Had often demanded to be taken to places such as the hospital or to forensics.

23) That psychologists who examined (or tried to examine) the Petitioner during forensic interviews regarding a possible insanity defense had concluded that he was malingering. On one occasion, while returning from a forensic interview, the Petitioner began rocking back and forth so uncontrollably in the back seat of a transport van that those transporting him feared that he would either hurt himself or break free and the Michigan State Police were summoned to provide an emergency escort.

24) That three to four weeks before the trial, the Petitioner's behavior improved. He stopped collecting metal objects, and was now wearing regular jail uniforms instead of the suicide gowns that he formerly wore. But, on the morning of the hearing he caused another incident. At the jail, about to be transported to court, he insisted on being handcuffed a certain way by a certain jailer. When another jailer refused to accomodate him, he told the other jailer not to touch him and used his body weight to passively resist. Once handcuffed, he

had to be carried form jail to the transport van. Lt. Sampsell assumed that, had the Petitioner not been cuffed, that the jailer would have been assaulted.

25) That other prisoners reported that the Petitioner had escape plans.

Although the court concluded that the Petitioner <u>was</u> <u>not</u> enough of a threat to courtroom decorum to warrant full shackles, the court nonetheless ruled that the Petitioner was a threat of injury to himself and others and an escape risk (an escape risk that was based upon the inferred assertion that the Petitioner was manipulating an insanity defense so that he could exploit escape opportunities while being transported from one facility to another for his forensic interviews). Hence, the Petitioner had to remain in full shackles throughout his entire trial. These full shackles were constantly visible to the jury during the trial.

None of the alleged activities (of sub-paragraphs 1) through 25), <u>supra</u>) occurred at the trial. The Petitioner conducted himself in an orderly and fashionable manner.

It must be pointed out that all of the testimony by Lt. Sampsell regarding the Petitioner's before-the-trial behavior was based upon the purported reports that were prepared by others. Therefore, hearsay. Lt. Sampsell testified form complete memory. None of the jail personnel, forensic examiners or inmates who purportedly reported on the Petitioner's alleged pretrial activities (referred to in sub-paragraphs 1) through 25), <u>supra</u>) were called to testify. Therefore, an evidentiary hearing should be held in order to make a factual record on Lt. Sampsell's testimony to determine whether her on-stand statements

concerning the Petitioner's purported pretrial behavior comports with the actual reports and records allegedly made by the jail personnel, forensic examiners and inmates, or whether her testimony was faulty.

Not only did the full shackles harm the Petitioner's presumption of innocence and create a substantially injurious inference of guilty, but when the judge ordered that the Petitioner be manacled in full shackles, the jury necessarily conceived a prejudice against the Petitioner as being, in the opinion of the judge, a dangerous man, and not to be trusted, even under the surveillance of officers.

This "dangerous" and "bad man" brand was especially harmful in this case because, not only was the Petitioner manacled in handcuffs, but in belly chains and leg irons. Therefore, the handcuffs were compounded by the belly chains, and the handcuffs and belly chains were compounded by the leg irons.

Even though the court gave a cautionary instruction, this did little to cure the jury's constant view of the Petitioner in full shackles when he sat at the defense table, when he stood for the jury, when he took the witness stand, and on more than one occasion, when he was led by the jury outside the courtroom. The jury instruction, if anything, only highlighted the full shackles, and re-emphasized the "dangerous man" viewpoint, without erasing the "bad man" perspective ink stain.

When the Petitioner was required to stand trial in full shackles, not only was his presumption of innocence jeopardized, but it relieved the prosecution of the burden of proof, because the Petitioner was already viewed by the jury as a "bad" and "dangerous" man, and he apparently committed the crime for which he stood trial on.

14. (B).

## GROUND TWO

THE PETITIONER WAS DENIED A FAIR AND IMPARTIAL TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN A PROSECUTION WITNESS WAS ALLOWED TO TESTIFY THAT THE PETITIONER HAD CONFESSED TO SIXTEEN TO TWENTY ADDITIONAL CRIMES THAT THE PETITIONER WAS NEVER CHARGED OR CONVICTED OF. THIS 1) CHILLED THE PRESUMPTION THAT THE PETITIONER WAS INNOCENT, AND 2) LOWERED THE PROSECUTION'S BURDEN OF PROOF.

## SUPPORTING FACTS

During the trial, Detective Sergeant Donald Ester (Sgt. Ester) of the Kalamazoo Police Department was allowed to testify that the Petitioner had confessed to sixteen to twenty additional breaking and enter crimes (bad acts), aside form the crime that he stood trial on. None of these purported confessions were recorded, reduced to writing, video taped, signed or reviewed by the Petitioner.

On more than one occasion, defense counsel objected to Sgt. Ester's other bad acts testimony, and each time, the court overruled the objection. The prosecutor argued that the court's ruling was correct because the defense had "opened the door" when it claimed that none of the other bad acts were recorded. This, according to the prosecutor, allowed Rule 404(b)(2) of the Michigan Rules of Evidence (<u>MRE</u>) to be skirted. The prosecutor gave no notice that he intended to offer any other bad acts in violation of <u>MRE</u> 404(b)(2).

The other bad acts were highlighted in the prosecutor's summation to the jury, and they were further compounded when the court gave instructions on the bad acts behavior.

-10-

14. (C).

## GROUND THREE

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT 1) GAVE A JURY INSTRUCTION ON INTOXICATION WHEN NO INTOXICATION DEFENSE WAS EVER USED BY THE PETITIONER, AND 2) APPLIED A JURY INSTRUCTION ON A LAW IN A RETROACTIVE FASHION WHEN THE LAW WAS PERSPECTIVE ONLY.

### SUPPORTING FACTS

The Petitioner was charged and convicted of first-degree home invasion, which is a specific-intent crime. The Petitioner testified that in the weeks before, and the days after the offense, he was "binging" on alcohol and drugs, making him paranoid and delusional. He further testified that he had no idea how some of the proceeds of the crime came to be among his belongings, saying "I don't know that I did it myself."

The prosecution asked for an instruction that intoxication is not a defense to any crime, not even a specific-intent crime. Defense counsel objected, noting that the defense had not formally raised an intoxication defense. The trial judge overruled the objection and gave the instruction, even though the judge explicitly acknowledged that the new law abolishing intoxication as a defense to specific-intent crimes did not apply to cases such as this one that occurred prior to September 1, 2002.

-11-

15. If any of the grounds listed in 14. (A), (B) and (C) were not previously presented in any other court, state or federal, state briefly what grounds were not presented, and give your reasons for not presenting them.

All three grounds in 14. (A), (B) and (C) were presented to all the courts in Michigan.

16. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack? No.

17. Give the name and address of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing: Patti S. Shirley (P20382), 707 Academy Street, Kalamazoo, Michgian 49007.

(B) At arraignment and plea: Patti S. Shirley of sub-paragraph (A), <u>supra</u>.

(C) At trial: Patti S. Shirley of sub-paragraph (A), <u>supra</u>.

(D) At sentencing: Patti S. Shirley of sub-paragraph (A), <u>supra</u>.

(E) On appeal: In the Michigan Court of Appeals, Douglas W. Baker (P49453), State Appellate Defender Office, 3300 Penobscot Building, Detroit, Michigan 48226.

(F) In any post-conviction proceeding: In the Michigan Supreme Court on appeal from the Michigan Court of Appeals, the Petitioner acted in <u>pro per</u>.

(G) On appeal from any adverse ruling in a post-conviction proceeding: There were no further appeals.

18. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? No. The charge was first-degree home invasion (one count) and the habitual criminal.

19. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? No.

### RELIEF REQUESTED

WHEREFORE, for all the foregoing reasons, the Petitioner requests:

1. That a writ of habeas corpus issue, or in the alternative;

2. That an evidentiary hearing be held regarding the issues within this habeas corpus petition.

3. That after the evidentiary hearing, that a writ of habeas corpus be issued.

4. That the court grant the Petitioner any further relief as justice and law requires.

Respectfully Submitted.

*Richard Roy Vendeville*

Richard Roy Vendeville, (206993)
Standish Maximum Correctional Facility
4713 West M-61
Standish, Michigan 48658

July 25, 2006.

I declare under penalty of perjury that the foregoing is true and correct.

Subscribed and sworn to before me on this 25th day of July, 2006.

_Shelley M. King_
Notary Public

SHELLEY M. KING
NOTARY PUBLIC, STATE OF MI
COUNTY OF BAY
MY COMMISSION EXPIRES Feb 13, 2012
ACTING IN COUNTY OF Arenac

My Commission Expires

-13-