

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD ROY VENDEVILLE,
Prisoner Number: 206993,
Standish Maximum Correctional Facility,

               Petitioner,

               Case Number: 4:06-CV-89

               Honorable Gordon J. Quist
               United States District Judge

vs.

               Honorable   Hugh   W.   Brenneman,   Jr.
               United   States   Magistrate   Judge

THOMAS BIRKETT, Warden,
Standish Maximum Correctional Facility,

               Respondent.
_____/

## REPLY TO "RESPONDENT'S ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS".

Comes now, Richard Roy Venderville (Petitioner), and pursuant to this Court's "Order To File Answer Or Other Pleading" dated September 1, 2006, moves to reply to the "Respondent's Answer In Oposition To Petition For Writ Of Habeas Corpus" (hereafter "Answer") by showing unto the Court that:

### PRELUDE TO ISSUES

1. The Petitioner denies that this Court should dismiss the habeas corpus petition for the reasons stated in the "Answer" (page 2 of "Answer").

2. The Petitioner denies that he has failed to exhaust state court remedies (page 2 of "Answer"). In fact, the Respondent openly admitted that the Petitioner had exhausted his state court remedies (page 6 of "Answer").

-1-

3. The Petitioner denies that he is in violation of the statute of limitations (page 2 of "Answer"). The Petitioner timely filed his habeas corpus petition within the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See "Petition For A Writ Of Habeas Corpus" dated July 25, 2006 (hereafter "Petition").*

4. The Petitioner denies that there are procedural defaults on any of the claims (page 2 of "Answer"). The Petitioner's claims were objected to at the state court trial level and were fully raised in the state appellate courts. See the "Petition."

5. The Petitioner denies that his trial errors did not have a substantial impact or influence on the outcome of the Petitioner's trial (page 2 of "Answer"). See the "Petition."

6. The Petitioner denies that the statement of facts in his "Petition" are not supported by the record (page 2 of "Answer"). The Respondent did not specify what facts cited are not supported by the record. Without being specific as to the Respondent's objection, this Court should consider the Respondent's objection waived. Should this Court determine that any of the facts are not supported by the record, then an evidentiary hearing, as requested (on pages -6-, -13- and -20-) in the "Petition" should be conducted in order to clarify, elaborate or construct the fats that are not contained in the record.

---

    * When the Petitioner makes page references to the "Petition," it entails the "Petition" and the memorandum of law that support the "Petition."

7. The Petitioner denies the Respondent's opposition for discovery (page 2 of "Answer"). A petitioner in a habeas corpus proceeding is entitled to discovery, <u>Jones</u> v <u>Wood</u>, 114 F3d 1002, 1008-1009 (CA 9, 1997) at a federal habeas corpus evidentiary hearing. <u>Townsend</u> v <u>Sain</u>, 372 US 293; 83 S Ct 745; 9 L Ed 2d 770 (1963).

8. The Petitioner denies that he is not entitled to bond, oral argument, or any other relief (page 2 of "Answer").

9. The Petitioner admits that the AEDPA governs the Petitioner's case (page 3 of "Answer").

10. The Petitioner admits that the AEDPA prohibits a federal court from granting a habeas corpus unless the state court decision was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the United States Supreme Court (page 3 of "Answer").

11. The Petitioner admits that the AEDPA prohibits a federal court from granting a habeas corpus unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (page 3 of "Answer").

12. The Petitioner denies that he has failed to meet his burden under the AEDPA and denies that he is not entitled to relief (page 4 of "Answer").

## GROUND ONE

THE PETITIONER WAS DENIED A FAIR AND IMPARTIAL TRIAL IN
VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HE STOOD
TRIAL BEFORE A JURY IN HANDCUFFS, BELLY CHAINS AND LEG
IRONS.

The Respondent argues that the trial court's reasoning to order the Petitioner to stand trial in full shackles was entirely justified, and if there was error, it was harmless due to the overwhelming evidenced against the Petitioner (page 10 of "Answer").

As noted by the "Petition" (pages -5- through -8-), the trial court made it's decision to keep the Petitioner in handcuffs, belly chains and leg irons (full shackles) based upon the sole testimony of Lieutenant Gail Sampsell (Lt. Sampsell). However, Lt. Sampsell's pretrial testimony regarding the Petitioner's alleged bizarre and hostile before-the-trial behavior is suspect and nothing less than a patchwork of lies.

Lt. Sampsell testified to each fact from complete memory, with the use of notes, reports or memoranda. She testified that the Petitioner:

1(A). Was very demanding (page -5- of "Petition").

1(B). However, Lt. Sampsell did not say what demands the Petitioner made.

2(A). Was a resource drain (page -5- of "Petition").

2(B). However, Lt. Sampsell did not explain how the Petitioner was a resource drain.

3(A). Was manipulative, destructive and violent (page -5- of "Petition").

3(B). Lt. Sampsell did not say who was manipulated, what was destroyed and who was assaulted if the Petitioner was so violent.

4(A). Had taken a swing at an officer while pretending to be overdosing on medication (page -5- of "Petition).

4(B). Lt. Sampsell did not say who the officer was that the Petitioner allegedly took a swing at. In addition, the Petitioner was always handcuffed behind his back. It is difficult to see how the Petitioner could take a swing at an officer with having his hands cuffed behind his back?

5(A). Had resisted officers and threatened to hurt specific staff members once he was released from his handcuffs (page -6- of "Petition").

5(B). Lt. Sampsel did not state the name of the officers and staff members that the Petitioner resisted and threatened. Why didn't these officers and staff members testify at the hearing to support Lt. Sampsell's allegations?

6(A). Had used profanity against jail staff (page -6- of "Petition").

6(B). Lt. Sampsell did not give the names of the jail staff or what was said. Why didn't these jail staff members testify at the hearing?

7(A). Had to always be escorted by two guards and handcuffed behind his back wherever he went, even to and from the restroom (page -6- of "Petition").

7(B). Lt. Sampsell did not explain how the Petitioner was able to take a swing at an officer (see ¶ 4(A), supra) when the Petitioner was always escorted by two guards and handcuffed behind his back

wherever he went.

8(A). Was caught hoarding small pieces of metal, which in theory, might have been used as weapons or to pick or jam a lock, and on one occasion, had used such a piece of metal to jam his handcuffs shut (page -6- of "Petition").

8(B). Lt. Sampsell did not produce any of these items at the hearing to support her position, nor did she produce the handcuffs that the Petitioner was said to have jammed with a piece of metal.

9(A). Had collected pieces of metal from a radiator and a phone coax at the jail (page -6- of "Petition").

9(B). Again, Lt. Sampsell did not produce these pieces of metal at the hearing.

10(A). Had tampered with transport vehicle door latches and collected ashtray springs and bits of metal from underneath the seats of transport vans.

10(B). Lt. Sampsell did not produce any of these items at the hearing, nor did she explain how the Petitioner could have performed these maneuvers while being handcuffed behind his back with waist and ankle chains.

11(A). Had asked a trustee to get him large metal staples from supply boxes (page -6- of "Petition").

11(B). Lt. Sampsell did not give the trustee's name nor did this trustee testify at the hearing.

12(A). Had tried to remove screws from items in the rehabilitation cell (page -6- of "Petition").

12(B). Lt. Sampell did not produce these screws, nor did she give the name(s) of the person(s) who saw this.

13(A). Had used the metal to jam doors (page -6- of "Petition").

13(B). Lt. Sampsell did not produce the purported metal or specify what doors were jammed.

14(A). Had removed items from the trustees cart (page -6- of "Petition").

14(B). Lt. Sampsell did not specify what items nor did she say what person(s) said this.

15(A). Had removed a ceiling tile (page -6- of "Petition").

15(B). Lt. Sampsell did not produce the purported tile, nor were any witnesses produced to say that the Petitioner had removed a ceiling tile.

16(A). Had dismantled a light in the isolation area in an attempt to get metal (page -6- of "Petition").

16(B). Lt. Sampsell did not produce the alleged light or metal, nor did she give the name(s) of the person(s) who saw this.

17(A). Was seen tampering with the electricity (page -6- of "Petition").

17(B). Lt. Sampsell did not explain this electricity tampering nor did she produce the name(s) of the person(s) who saw this.

18(A). That a search was conducted and pieces of metal were found sharpened down in the form of weapons (page -6- of "Petition").

18(B). Lt. Sampsell did not produce the pieces of metal nor did she give the name(s) of the person(s) who conducted the search and purportedly found the metal pieces.

19(A). Was climbing the jail bars while making Tarsan yells, wrapping himself in urine-soaked toilet paper and placing his bodily fluids and bodily substances in areas where officers could not avoid them (page -7- of "Petition).

19(B). Sgt. Emmert asked the Petitioner to scare young groups of people who would come through the jail on field trips. The Tarsan yells were done for this purpose. As for the Petitioner wrapping himself in urine-soaked toilet paper and placing his bodily fluids/substances in areas where officers could not avoid them is complete fiction. Lt. Sampsell gave no name(s) of the officer(s) who claimed that the Petitioner did this.

20(A). Was unruly, physically aggressive and out of control when being transported (page -7- of "Petition").

20(B). The Petitioner was not allowed to shower for a month at a time and was made to sleep on the floor in the middle of the jail where it was impossible to sleep. The Petitioner's complaints with regards to the latter was classified by Lt. Sampsell as unruly and aggressive behavior on the part of the Petitioner.

21(A). Had threatened to hurt himself, and on one occasion, had opened up both of his wrists to the point that he was actually puddling blood. The jail officials, therefore, considered him to be a suicide risk (page -7- of "Petition").

21(B). Lt. Sampsell did not give the day or month that this was suppose to have occurred.

22(A). Had often demanded to be taken to places such as the hospital or to forensics (page -7- of "Petition").

22(B). Lt. Sampsell failed to say that these requests were for a dental appointment and to be observed for a possible insanity defense.

23(A).  That  psychologists  who  examined  (or  tried  to  examine)

the  Petitioner  during  forensic  interviews  regarding  a  possible  insanity

defense  had  concluded  that  he  was  malingering.  On  one  occasion,  while

returning  from  a  forensic  interview,  the  Petitioner  began  rocking  back

and  forth  so  uncontrollably  in  the  back  seat  of  a  transport  van  that

those  transporting  him  feared  that  he  would  either  hurt  himself  or

break  free  and  the  Michigan  State  Police  were  summoned  to  provide  an

emergency  escort  (page  -7-  of  "Petition").

23(B).  Lt.  Sampsell  failed  to  state  that  while  the  Petitioner

was  chained  to  the  floor,  the  police  lost  one  of  the  four  padlocks

and  had  to  stop  at  the  Washtenow  County  Jail  to  find  it.

24(A).  That  three  to  four  weeks  before  the  trial,  the  Petitioner's

behavior  improved.  He  stopped  collecting  metal  objects,  and  was  not

wearing  regular  jail  uniforms  instead  of  the  suicide  gowns  that  he

formerly  wore.  But,  on  the  morning  of  the  hearing  he  caused  another

incident.  At  the  jail,  about  to  be  transported  to  court,  he  insisted

on  being  handcuffed  a  certain  way  by  a  certain  jailer.  When  another

jailer  refused  to  accomodate  him,  he  told  the  other  jailer  not  to  touch

him  and  used  his  body  weight  to  passively  resist.  Once  handcuffed,

he  had  to  be  carried  from  jail  to  the  transport  van.  Lt.  Sampsell

assumed  that,  had  the  Petitioner  not  been  cuffed,  that  the  jailer  would

have  been  assaulted  (page  -8-  of  "Petition").

24(B).  What  Lt.  Sampsell  failed  to  state,  however,  was  on  the

day  of  the  trial,  transport  guard  Rich  Sharon  (K-200  County  Sheriff)

entered  the  cell.  He  handcuffed,  waist-chained  and  leg  ironed  the

Petitioner.  As  the  Petitioner  was  leaving  for  court,  two  other  deputies

(not  the  transport  officers),  entered  the  cell  and  told  deputy  Rich

Sharon  that  the  chains  were  not  tight  enough.  Two  other  deputies  put

the Petitioner up against the jail bars and put a foot on the Petitioner's back and pulled tight which hurt the Petitioner to the extent that the Petitioner's could not breath. The Petitioner was taken to the transport van and thrown down to the ground on the way to the van. Officer Rich Sharon told Sergeant Harring about the incident and Sergeant Harring removed the chains and fixed the tightness. The other two K-200 deputies were told to stay away from the Petitioner and leave the Petitioner alone. The Petitioner was escorted to court by Rich Sharon and Ron Mayo with no incident.

None of these officers were produced at the pretrial hearing. It was the word of Lt. Sampsell which convienced the trial court to keep the Petitioner in full shackles.

25(A). That other prisoners reported that the Petitioner had escape plans (page -8- of "Petition").

25(B). Lt. Sampsell did not give the names of these other prisoners, nor did they testify at the hearing.

In essence, Lt. Sampsell's testimony and the trial court's ruling was based upon hearsay and innuendo.

The Petitioner relies upon his claim that a federal evidentiary hearing is necessary pursuant to Townsend v Sain, 372 US 293; 83 S Ct 745; 9 L Ed 2d 770 (1963) so that an accurate and adequate record can be made with regards to the testimony given by Lt. Sampsell at the state trial court. If her testimony was faulty and her facts incorrect, then the decision by the trial court in having the Petitioner stand trial in full shackles is also faulty.

The United States Supreme Court held that shackles should be used only as a last resort. Illinois v Allen, 397 US 337, 344; 90 S Ct 1057; 25 L Ed 2d 353 (1970). In  this case the testimony by Lt.

Sampsell was used to convince the trial judge that the Petitioner was a dangerous and bad man who could not be trusted. This dangerous and bad man point had to be in the minds of the jurors as well.[*]

The Petitioner relies upon the facts and law in his "Petition" to further corroborate his position.

## GROUND TWO

THE PETITIONER WAS DENIED A FAIR AND IMPARTIAL TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN A PROSECUTION WITNESS WAS ALLOWED TO TESTIFY THAT THE PETITIONER HAD CONFESSED TO SIXTEEN TO TWENTY ADDITIONAL CRIMES THAT THE PETITIONER WAS NEVER CHARGED OR CONVICTED OF. THIS: 1) CHILLED THE PRESUMPTION THAT THE PETITIONER WAS INNOCENT, AND 2) LOWERED THE PROSECUTION'S BURDEN OF PROOF.

In his "Answer," the Respondent has advanced a number of reasons why this Court should not grant the Petitioner a writ of habeas corpus. The Petitioner will treat each aspect individually:

1(A). Error by state court in the admission of evidence are not cognizable in habeas corpus proceedings unless (Petitioner's emphasis): 1) they deny the right to a fair trial, 2) infringe upon specific constitutional rights or (Petitioner's emphasis), 3) are so prejudicial as to render the trial fundamentally unfair (pages 11 and 12 of "Answer").

---

    * It should be noted that on the last day of the pretrial hearing the Petitioner was escorted, fully shackled, by four armed guards with shotguns in hand, and lead directly through the forty-one prospective jury members who were in the lobby. This was compounded with the jurors when they came into the courtroom and the Petitioner was sitting there in full shackles. This was not a part of the record, but needs to be.

1(B). The Petitioner states that errors by state courts in the admission of evidence can be challenged by way of habeas corpus. Davis v Alaska, 415 US 308; 94 S Ct 1105, 1106; 39 L Ed 2d 347 (1974); Washington v Texas, 388 US 14; 87 S Ct 1920, 1925; 18 L Ed 2d 1019 (1967); Chambers v Mississippi, 410 US 284; 93 S Ct 1038, 1040; 35 L Ed 2d 297 (1973) (these cases are clearly established Federal law by the United States Supreme Court).

The Petitioner was denied: 1) the right to a fair trial because the Petitioner was never charged, tried or convicted of the bad acts that the prosecution had used and which the jury had heard, 2) the use of the bad acts fall under the Due Process Clause of the Fourteenth Amendment (a specific constitutional right), and 3) the bad acts were prejudicial because the prosecution used these bad acts to show intent, i.e., since the Petitioner had committed these other bad acts, he must have committed the one he was on trial for. Spencer v Texas, 385 US 554, 560; 87 S Ct 648, 652; 17 L Ed 2d 606 (1967); Michelson v United States, 335 US 469, 475-476; 69 S Ct 213, 218; 93 L Ed 168 (1948); Estella v McGuire, 502 US 62, 70; 112 S Ct 475, 481; 116 L Ed 2d 385 (1991).

2(A). Respondent cites Estelle v McGuire, supra, in his effort to defeat the Petitioner's claims.

2(B). However, in Estelle v McGuire, supra, at 502 US 62, 75; 112 S Ct 475; 116 L Ed 2d 385, the United States Supreme Court declined to hold that alleged prior bad acts did not violate due process.

In the Petitioner's case the bad acts were not just alleged. The Petitioner was never charged, tried or convicted of the bad acts that were used and this is a known fact.

-12-

Furthermore, in Estelle v McGuire, supra at 502 US at 75; 112 S Ct at 475, footnote 5, the United States Supreme Court stated that it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes to show propensity to commit a charged crime. This is exactly what happened in the Petitioner's case. The state was allowed to use uncharged crimes to show that since the Petitioner had committed these other bad acts then he had the propensity to commit the one that he was on trial for.

3(A). State courts are allowed to interpret its own law and these interpretations are not reviewable by way of habeas corpus (page 11 of "Answer").

3(B). In Sandstrom v Montana, 442 US 510; 99 S Ct 2450, 2454-2455; 61 L Ed 2d 39 (1979), the United States Supreme Court held that the state does not have the final say regarding interpretations of law.

4(A). Errors of state law on the admission of evidence are not questionable by habeas corpus (pages 11 and 12 of "Answer").

4(B). Errors of state law on the admission of evidence are reviewable by habeas corpus. Davis v Alaska, supra; Washington v Texas, supra; Chambers v Mississippi, supra.

5(A). Only federal questions are cognizable on habeas corpus (page 11 of "Answer").

5(B). The Petitioner has raised a federal constitutional issue and it can be reviewed by habeas corpus. Cupp v Naughten, 414 US 141; 94 S Ct 396, 397; 38 L Ed 2d 368 (1973).

6(A). Even a violation of state law does not ordinarily present a federal constitutional question (page 11 of "Answer").

6(B). A state law can present a federal constitutional question. Washington v Texas, supra; Chambers v Mississippi, supra; Davis v Alaska, supra.

7(A). Federal habeas courts have no authority to interfere in matters of state law (page 1 of "Answer").

7(B). Federal courts do have the authority to review matters of state law when federal constitutional questions are presented. Patterson v New York, 432 US 197; 97 S Ct 2319; 53 L Ed 2d 281 (1977); Spencer v Texas, supra.

8(A). Habeas corpus cannot be used to try state law issues de novo (page 11 of "Answer").

8(B). Federal courts can and do review state court issues de novo for violations of federal constitutional standards. Milton v Wainwright, 407 US 371; 92 S Ct 2174, 2178; 33 L Ed 2d 1 (1972). "De novo review" means that the district court must consider the matter as if it had not been heard before and as if no decision had been previously rendered. The district court must arrive at its own independent conclusion. United States v Boulware, 350 F Sup 2d 837, 841 (D Hawaii, 2004).

9(A). Federal courts cannot act as an additional state appellate court (page 1 of "Answer").

9(B). State courts are under the same duty to respect and protect the federal constitutional rights of the Petitioner as are the federal courts. When they do not the federal courts can act. United States ex rel Johnson v Rundle, 286 F S8upp 765 (ED Pa, 1968); Batchlor v Cupp, 693 F2d 859, 862-863 (CA 9, 1982).

-14-

GROUND THREE

THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO
DUE PROCESS PURSUANT TO THE FOURTEENTH AMENDMENT OF THE
UNITED STATES CONSTITUTION WHEN THE TRIAL COURT: 1) GAVE
A JURY INSTRUCTION ON INTOXICATION WHEN NO INTOXICATION
DEFENSE WAS EVER USED BY THE PETITIONER, AND 2) APPLIED
A JURY INSTRUCTION ON A LAW IN A RETROACTIVE FASHION WHEN
THE LAW WAS PERSPECTIVE ONLY.

1. The Petitioner admits that he did not raise an intoxication
defense at his trial (page 13 of "Answer"). However, it was the
prosecution, not the defense, who ask for, and received the faulty
instruction on intoxication knowing full well that: 1) the Petitioner
did not raise an intoxication defense, and 2) the statute did not apply
to the Petitioner. The prosecution created it's own error by choice
(pages 11 and 16 of "Petition").

2. The Petitioner admits that jury instructions in state trials
are matter of state law (page 13 of "Answer"), however, denies that
jury instructions in state trial are not reviewable in federal habeas
proceedings (page 13 of "Answer"). See Sandstrom v Montana, 442 US
510; 99 S Ct 2450; 61 L Ed 2d 39 (1979); Mullaney v Wilbur, 421 US
684; 95 S Ct 1881; 44 L Ed 2d 508 (1975); Patterson v New York, 432
US 197; 97 S Ct 2319; 53 L Ed 2d 281 (1977); Cupp v Naughten, 414 US
141; 94 S Ct 396, 397; 38 L Ed 2d 368 (1973) (these cases are clearly
established Federal law by the United States Supreme Court).

Moreover, the Respondent contradicts himself (on pages 13 and
14 of the "Answer"). On page 13 of the "Answer," the Respondent states
that state court jury instructions are not reviewable by federal habeas
corpus (citing Nickerson v Lee, 971 F2d 1125, 1137 (CA 4, 1992).[*] Yet,

---

[*]  Nickerson v Lee, supra, was a case where the state trial judge
failed to give a jury instruction on self-defense because the court
felt that it was not warranted. In the Petitioner's case, the trial
judge gave a jury instruction that had no force of law.

on page 14 of the "Answer," Respondent cites the United States Supreme Court decision of <u>Henderson</u> v <u>Kibbe</u>, 431 US 145, 154; 97 S Ct 1730; 52 L Ed 2d 203 (1977) which states that state court jury instructions are reviewable by federal habeas corpus.

3. The Petitioner denies that state courts have the final say in matter of state law (page 13 of the "Answer"). <u>Washington</u> v <u>Texas</u>, 388 US 14; 87 S Ct 1920, 1925; 18 L Ed 2d 1019 (1967); <u>Chambers</u> v <u>Mississippi</u>, 410 US 284; 93 S Ct 1038, 1040; 35 L Ed 2d 297 (1973); <u>Davis</u> v <u>Alaska</u>, 415 US 308; 94 S Ct 1105, 1106; 39 L Ed 2d 347 (1974) (these cases are clearly established Federal law by the United States Supreme Court).

The Petitioner further denies that a federal habeas court may not intervene in order to correct a perceived violation of state law (page 13 of the "Answer"). See <u>Sandstrom</u> v <u>Montana</u>, <u>supra</u>, at 99 S Ct at 2454-2455 (state courts have the final authority on the legal weight to be given a jury instruction, but they do not have the final authority on the interpretation which a jury could have given to a state court jury instruction that was misleading).

In addition, the Respondent cited <u>Estelle</u> v <u>McGuire</u>, 502 US 62; 112 S Ct 475; 116 L Ed 2d 385 (1991) to support his non-intervention position concerning state jury instructions by federal habeas corpus. However, the United States Supreme Court stated in <u>Estelle</u> v <u>McGuire</u>, <u>supra</u>, at 112 S Ct at 482:

> "... the fact that the instruction was <u>allegedly</u> incorrect under state law is not a basis for habeas relief" (emphasis added).

In the Petitioner's case, the jury instruction <u>was</u> <u>not</u> "allegedly" incorrect, it was in fact <u>incorrect</u>. The prosecution asked for the

intoxication instruction, defense counsel objected to giving it, but the trial court gave the instruction nonetheless, knowing full well that this instruction did not apply to the Petitioner's charges. See pages -11-, and -16- through -19- of the "Petition."

Furthermore, in Estelle v McGuire, supra, at 112 S Ct at 481-482, the state trial judge deviated in part from a standard jury instruction that was carved out by the judiciary. But, in the Petitioner's case, the trial judge deviated completely from a state statute that was enacted by the legislature.

Courts cannot judicially re-draft statutory language, Wilson v N.L.R.B., 920 F2d 1282, 1289 (CA 6, 1990), and if it does so, due process is violated. Helton v Fauver, 930 F2d 1040, 1044-1045 (CA 3, 1991). The sole function of a court is to enforce the law according to a statute. Caminette v United States, 242 US 470, 485; 37 S Ct 192, 194 (1917). When the trial judge in this case gave the intoxication instruction when no intoxication defense was raised, and compounded that error by giving the intoxication instruction that had not become law at the time of the crime, the trial court not only re-drafted the statute, but legislated from the bench.

4. The Petitioner denies that it would be a rare case in which a federal court could conclude that a state court committed an error under state law (pages 13 and 14 of the "Answer"). A person need only turn to the pages of Shepard's United States Citations and Shepardize Sandstrom v Montana, supra; Mullaney v Wilbur, supra; Patterson v New York, supra; Cupp v Naughten, supra, and related United States Supreme Court cases to defeat the Repondent's position. The federal courts have granted relief in literally hundreds of state court cases.

-17-

5. The Petitioner denies that errors in the application of state law are not to be questioned in habeas corpus (page 14 of the "Answer"). See ¶¶ 2., 3., and 4., supra.

6. The Petitioner denies that he has failed to show that he was prejudiced by the faulty instruction (page 14 of the "Answer"). The Petitioner has shown that he was prejudiced by the wrong instruction. See pages -11- and -16- through -19- of the "Petition."

7. The Petitioner denies that he has failed to show that the state court's decision on the jury instruction issue was contrary to or an unreasonable application of Supreme Court precedent. In Henderson v Kibbe, 431 US 145, 155; 97 S Ct 1730, 1737; 52 L Ed 2d 203 (1977), the United States Supreme Court opined:

> "An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law" (emphasis added).

The Petitioner's faulty jury instruction was far worse than an omission or an incomplete instruction. The Petitioner's jury instruction was a complete misstatement of the law and it was fatal. See pages -11-; -16- through -19- of the "Petition."

## SUMMARY

Respondent has made much of the fact that the AEDPA and 28 USC §2254(d) has altered the standard of review regarding habeas corpus. Yet. it is interesting to note that the Respondent has continously relied upon, and cited cases that were decided before the AEDPA. The Respondent has also relied upon decisons that were rendered by the federal district courts and federal court of appeals. See "Answer."

## RELIEF REQUESTED

WHEREFORE, for all the foregoing reasons, the Petitioner requests:

1. That a writ of habeas corpus issue, or in the alternative;

2. That an evidentiary hearing pursuant to <u>Townsend</u> v <u>Sain</u>, 372 US 293; 83 S Ct 745; 9 L Ed 2d 770 (1963), be held regarding the issues within the habeas corpus petition.

3. That after the evidentiary hearing, that a writ of habeas corpus be issued.

4. That the court grant the Petitioner any further relief as justice and law requires.

Respectfully Submitted.

Richard Roy Vendeville, (206993)
Standish Maximum Correctional Facility
4713 West M-61
Standish, Michigan 48658

Dated: April /2 , 2007.

-19-