UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD ROY VENDEVILLE,

    Petitioner,

v.

Case No. 4:06-cv-89
Hon. Gordon J. Quist

CINDI S. CURTIN,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.    Background

The Michigan Court of Appeals summarized the underlying facts of this case as follows:

> On the night of April 27, 2002, the victim went to bed after leaving her purse in one of the two vehicles parked in her attached garage, and her wallet in the other. The following morning, the access door to the garage was partially open, the victim's wallet and several items from her purse were missing, and the fence gate leading to the victim's backyard was damaged.
>
> On May 1, 2002, police arrested defendant in connection with another matter after a chase on foot. Defendant had on his person the victim's driver's license and one of her credit cards. Defendant was advised of his *Miranda* rights at the scene of his arrest and, according to several officers, he agreed, and was eager, to talk to the police. When questioned about the break-in, defendant stated that he acted as a lookout while two other men went into the garage and came out with items, and that he held the bag into which the stolen property was placed. Defendant agreed to direct the police to the victim's house. According to the police, defendant gave them directions to the house, pointed it out upon arrival, and acknowledged that the victim's license had been taken from there. Later, the police visited defendant's mother's home. She and defendant's brother voluntarily turned over property of

>    defendant's, including property removed from a car that defendant had been using. The property included various items from the victim's wallet.
>
>    Defendant offered the alibi testimony of his mother, who claimed that defendant was at her home between April 27, 2002 and April 29, 2002, but conceded that it was possible that defendant left her house when she was sleeping. Defendant also offered testimony that he was under the influence of drugs and alcohol on a regular basis in April 2002, and that he was delirious and delusional at the end of April 2002. Defendant testified that he did not have a clear recall of being interviewed by the police, that he did not believe he confessed to the crime, and that he identified two others as being involved either to get them in trouble because he was delusional, or to make a deal with the police. Defendant also testified that the items his mother turned over to the police were not his, but rather, were taken from his girlfriend's car, which was used by many persons as a "crack car." Defendant testified that he had no knowledge about the victim's license.

*People v. Vendeville*, No. 248161, slip op. at 1-2 (Mich. App. Nov. 9, 2004) (footnote omitted).

After a jury trial, petitioner was convicted of first-degree home invasion, M.C.L. § 750.110a(2). *Id.* at 1-6. The court sentenced petitioner as a habitual offender, third-offense, M.C.L. § 769.11, to twenty to forty years imprisonment. *Id.* Petitioner, through counsel, presented five issues in his direct appeal to the Michigan Court of Appeals:

> I. Did the trial judge deny [petitioner] his right to due process and the presumption of innocence by requiring him to be tried in shackles that were visible to the jury despite the judge's conclusion that [petitioner's] courtroom behavior was not a problem and despite the paucity of evidence that he was a true escape risk or injury threat?
>
> II. Did defense counsel open the door to evidence that [petitioner] confessed to 16 or 20 break-ins simply by asking why the officer did not record [petitioner's] statement? Was the trial judge's decision to admit other acts evidence on an open-door theory an abuse of discretion that deprived petitioner of a fair trial?
>
> III. In this prosecution of a specific-intent crime where there was ample evidence of [petitioner's] intoxication, did the trial court reversibly err by instructing the jury, over defense objection, that intoxication is not a defense to any crime, even though the new law abolishing the

        defense of voluntary intoxication applies only to crimes committed on or after September 1, 2002, and this crime was committed before?

IV.    Is [petitioner] entitled to resentencing where two sentencing guidelines variables were misscored and where correcting either would make the sentence imposed a guidelines departure? Is the error preserved, plain, or the basis for a finding of ineffective assistance of counsel?

Brief on Appeal (docket no. 27a).

While the matter was pending on appeal, the Michigan Court of Appeals denied petitioner's motion to remand to the trial court, stating that petitioner "has failed to demonstrate that the development of a factual record is required for appellate consideration of the issue." *People v. Vendeville*, No. 248161 (Order, March 2, 2004). The Michigan Supreme Court subsequently denied petitioner's application for leave to appeal the order. *People v. Vendeville*, No. 126006 (Aug. 31, 2004).

The Michigan Court of Appeals affirmed the convictions. *People v. Vendeville*, No. 248161. In his pro per application for leave to appeal to the Michigan Supreme Court, petitioner raised the same four issues as well as the following new issue:

V.    The Court of Appeals committed clear error when it denied [petitioner's] two motions to remand then proceeded to deny appellate relief based on an inadequate factual record.

Application for leave to appeal (docket no. 27b). The Michigan Supreme Court denied petitioner's application. *People v. Vendeville*, No. 127671 (Mich. June 30, 2005).

Mr. Vendeville has filed a petition for habeas corpus in this court raising the following claims:

I.    The petitioner was denied a fair and impartial trial in violation of the Due Process Clause of the Fourteenth Amendment of the United

> States Constitution when he stood trial before a jury in handcuffs, belly chains and leg irons.
>
> II. The petitioner was denied a fair and impartial trial in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution when a prosecution witness was allowed to testify that the petitioner had confessed to sixteen to twenty additional crimes that the petitioner was never charged or convicted of, this 1) chilled the presumption that the petitioner was innocence [sic], and 2) lowered the prosecution's burden of proof.
>
> III. The petitioner was denied his constitutional rights to Due Process pursuant to the Fourteenth Amendment of the United States Constitution when the trial court 1) gave a jury instruction on intoxication when no intoxication defense was ever used by the petitioner, and 2) applied a jury instruction on a law in a retroactive fashion when the law was prospective only.

Petition (docket no. 1).

## II.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III. Petitioner's habeas claims

### A. Petitioner appeared before the jury in shackles

First, petitioner contends that his due process rights were violated when the trial court denied his request to be tried without handcuffs, belly chains and leg irons. The Michigan Court of Appeals addressed this issue as follows:

> Defendant first argues that the trial court deprived him of his right to due process by requiring him to wear shackles during trial. Defense counsel moved before trial to have defendant's shackles removed. The trial court denied the motion.
>
> We review a decision to restrain a defendant for an abuse of discretion under the totality of the circumstances. *People v. Dixon*, 217 Mich. App 400, 404-405; 552 NW2d 663 (1996).
>
>> Freedom from shackling is an important component of a fair trial. Consequently, the shackling of a defendant during trial is permitted only in extraordinary circumstances. Restraints should be permitted only to prevent the escape of the defendant, to prevent the defendant from injuring others in the courtroom, or to maintain an orderly trial. [*Id.* at 404 (citations omitted).]
>
> A decision to restrain a defendant may be based on information maintained by the Department of Corrections or a county jail. *Id.* at 405. *See also People v. Julian*, 171 Mich. App 153, 160-162; 429 NW2d 615 (1988). It may be based on a defendant's prior conduct. *Dixon*, *supra* at 405.
>
> In the instant case, the trial court observed that although defendant was not enough of a threat to courtroom decorum to warrant shackling, defendant was an escape risk and posed a threat of injury to himself and others, and thus ordered that defendant remain in restraints during trial. The trial court's decision was based on testimony provided by Lieutenant Gail Sampsell, assistant commander of the Kalamazoo County Jail, and on other records of defendant's behavior and mental state. Lieutenant Sampsell testified that, from the time of his incarceration, defendant required continuous monitoring. He was initially suicidal. It was later reported that he was planning an escape, and a search revealed that he possessed small metal items, sharpened in the form of weapons. He also tampered with jail doors, took items apart in the jail in order to obtain metal, threatened to hurt jail staff, jammed the locks of his handcuffs, obtained metal from the seats of the transport vehicles, tampered with the vehicle door latches and springs, hid wire in his flip flops, asked a jail trustee to obtain large staples for him, stole ceiling tiles,

>dismantled a light, exposed jail personnel to the biohazard of his feces and urine, became so unruly during one transport that he had to be resecured and receive an emergency escort back to the jail, and injured himself repeatedly. While defendant's behavior had calmed down somewhat in the weeks immediately preceding trial, he threatened a jail trustee in March 2003, and had to be escorted by numerous officers to the transport van on April 3, 2003, before his hearing with respect to the use of restraints at trial. Lieutenant Sampsell believed that defendant would have committed an assault on that date if he had not be restrained. Trial began five days later. The forensic reports, which were reviewed by the trial court, revealed that defendant was feigning mental illness and was an escape risk. During one attempted forensic examination, defendant used a pencil as a weapon and tried to stab himself. Later, despite his handcuffs, he managed to urinate on the floor and the table in the interview room.
>
>We conclude the trial court did not abuse its discretion by determining that defendant be restrained at trial. Defendant's institutional misconduct, as detailed in documents and Lieutenant Sampsell's testimony, demonstrates that the court had legitimate concerns regarding defendant's trying to escape or injure others. *Julian*, *supra* at 161-162,
>
>The trial court attempted to minimize the prejudicial effect of defendant's restraints by having defendant moved outside the presence of the jurors and by providing a drape around the defense table to hide defendant's leg irons. Although the trial court took measures to hide the restraints and minimize prejudice, defendant wanted the jury informed that he was in restraints. The trial court obliged defendant in this regard and gave a cautionary instruction prepared by defendant. Defendant also inquired about the matter during voir dire. Even though the jury was fully aware that defendant was restrained, the trial court continued to minimize the chance that the jury would observe defendant in his restraints. And, because the jury was specifically instructed that the restraints were not evidence and could not be considered as evidence, defendant was not deprived of a fair trial.

*People v. Vendeville*, No. 248161, slip op. at 2-3.

"The law has long forbidden routine use of visible shackles during the guilt phase [of a criminal trial]; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck v. Missouri*, 544 U.S. 622, 626 (U.S. 2005). Historically, courts facing a decision to shackle a criminal defendant at trial emphasized the importance of giving effect to three fundamental principles. *Id.* at 630. First, the visual shackling undermines the presumption of innocence. *Id.*

7

Second, shackles can interfere with the accused's constitutional right to a meaningful defense, by interfering with a criminal defendant's ability to communicate with counsel. *Id.* at 631. Third, the routine use of shackles in the presence of the jury would undermine the courtroom's formal dignity and decorum, which includes the respectful treatment of defendants. *Id.* As the Supreme Court explained:

> [T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.

*Id.* at 629. "[W]here a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation." *Id.* at 635.

The Michigan Court of Appeals accurately summarized the trial court's reasoning for denying petitioner's motion. Motion Trans. (April 4, 2003) at pp. 26-31. The court ultimately concluded that:

> It is a discretionary call, but I'm satisfied that from the findings I've made here, given the opportunity, he will try to escape. Given the opportunity, he will try to injure someone. So, there is only one way to minimize that -- don't hold your hand up Mr. Vendeville, I'm still talking. I'm giving an opinion. You can talk to your lawyer in a minute.
>
> I will deny the motion to remove the belly chains, the handcuffs and the leg irons.

*Id.* at 30. The trial court properly exercised its discretion by taking into account potential security problems and petitioner's risk of escape in reaching its decision to require belly chains, handcuffs and leg irons. *Deck*, 544 U.S. at 629. The extensive evidence indicated that petitioner's past

institutional misconduct indicated that he posed both an extreme risk of escaping from custody and injuring other people.

Moreover, it appears to the court that petitioner waived this claim. Although the trial court offered to shield the bottom of the counsel's table so that the jury could not see petitioner's leg restraints, petitioner informed his attorney and advised the court that he did not want this accommodation. Trial Trans. I (April 8, 2003) at pp. 9-10. In addition, petitioner insisted on being tried in "jail orange" clothing. Motion Regarding Restraints Trans. (April 3, 2003) at p. 179; Trial Trans. I at pp. 4, 13. Petitioner and his counsel also requested a curative instruction that emphasized the fact that he was in shackles.[1] By rejecting the opportunity to stand trial in civilian clothing and by rejecting the court's attempt to hide his restraints from the jury, petitioner waived any constitutional challenges to his conviction on the basis that the jury saw him dressed and shackled as a prisoner. *See Carey v. Musladin*, 549 U.S. 70, 75 (2006) (while "[t]he State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes," a criminal defendant waives the claim by failing to object at trial) (quoting *Estelle v. Williams*, 425 U.S. 501, 512-13 (1976).

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner is not entitled to relief on this claim.

---

[1] The proposed curative instruction provided as follows:

> "The fact that the Defendant is in restraints is not evidence and you must not consider it as such. It must not affect your verdict in any way."

Trial Trans. I at 10.

9

### B.     Evidence of other bad acts

Next, petitioner contends that his due process rights were violated when a prosecution witness testified that petitioner had confessed to committing sixteen to twenty uncharged crimes. The Michigan Court of Appeals addressed this issue as follows:

> Defendant next argues that he was deprived of a fair trial by the trial court's permitting the prosecution to inquire about his confessions to sixteen or twenty additional breaking and entering crimes. Defendant argues that the court abused its discretion by admitting this evidence because the prosecution failed to give notice that it intended to offer other-acts evidence under MRE 404(b), and because defendant did not open the door to the testimony.
>
> During opening statement, defense counsel indicated that the jury would hear defendant's statements related to the charged crime. She stated that the statements were not recorded, written, videotaped, signed, or reviewed by defendant, and informed the jury that it could consider these facts when evaluating the confession. She referred to the confession as "a lack of evidence." During trial, the prosecution elicited testimony from Detective-Sergeant Donald Ester that defendant provided details about the charged crime and later directed officers to the victim's address where he pointed out her house in order to verify his statements. The prosecutor did not inquire about defendant's confessions to any other crimes.
>
> On cross-examination, defense counsel questioned Detective Ester about the fact that defendant's statements were not reduced to writing, were not videotaped, and were not otherwise recorded. Defense counsel elicited that defendant was not asked to sign any statement. Defense counsel raised the issue a second time during cross-examination, asking whether Detective Ester took any type of written, audio, or videotape of defendant's statements. When Detective Ester answered in the negative, defense counsel continued to pursue the subject, again inquiring whether any of the information was reduced to writing in a report that defendant could review or whether defendant was offered any type of report to sign. On redirect, over defendant's objections, the prosecutor was allowed to inquire about the reason that defendant's statements were not reduced to writing. Detective Ester testified that, because of the complexity and number of cases involved, it was impossible to sit down and reduce all of the information to writing. Detective Ester testified that defendant admitted to sixteen or twenty "break-ins" during his interview. Eventually, the trial court directed the prosecutor that the line of inquiry had proceeded far enough and provided the jury with a cautionary instruction, stating that Detective Ester's testimony was to be considered for the limited purpose of explaining why defendant's statements were not written, and not as to the charged offense.

> The challenged testimony was relevant to rebut defendant's argument that the fact that his confession was not reduced to writing or otherwise recorded rendered the alleged confession suspect. MRE 402 provides that all relevant evidence is admissible. "Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Defendant's confession was of consequence at trial, and Detective Ester's explanation on redirect examination was relevant to rebut the taint cast by defense counsel's questioning.

*People v. Vendeville*, No. 248161, slip op. at 3-4.

Respondent contends that petitioner's claim involves a question of state law that is not cognizable on federal habeas review. The court agrees. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). States have broad authority to promulgate rules that exclude evidence provided that they are "arbitrary" or "disproportionate to the purposes they are designed to serve." *Baze v. Parker*, 371 F.3d 310, 323-24 (6th Cir. 2004), *quoting United States v. Scheffer*, 523 U.S. 303, 308 (1998). To violate due process, state court rulings must "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (internal quotations and brackets omitted). Consequently, state court rulings on the admission of evidence are not subject to federal habeas review unless the error denied petitioner a fundamentally fair trial. *Clemmons*, 34 F.3d at 357-358; *see Estelle*, 502 U.S. at 67-70. *See Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) ("[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial"). Furthermore, when

11

reviewing a state court's evidentiary determination pursuant to § 2254, a federal court may not grant relief unless the petitioner is able to show that the state trial court's evidentiary rulings were in conflict with a decision "reached by [the Supreme] Court on a question of law or if the state court [decided the evidentiary issue] differently than [the Supreme] Court [did] on a set of materially indistinguishable facts." *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000), *quoting Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Here, the Michigan Court of Appeals found that the trial court properly admitted this "other acts" evidence to rebut petitioner's argument that the fact his confession was not reduced to writing or otherwise recorded rendered the confession suspect. Even if the trial court had committed error in admitting this evidence, the admission of other acts evidence does not implicate a federal constitutional right. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Accordingly, petitioner's claim should be denied.

### C.   Jury instruction regarding intoxication

Finally, petitioner contends that the trial court improperly instructed the jury regarding an intoxication defense that was not raised. The Michigan Court of Appeals addressed the issue as follows:

> Defendant next argues that the trial court erred in instructing the jury, over his objection, that voluntary intoxication was not a defense. We review de novo a defendant's claim that an erroneous jury instruction was given. *People v. Heikkinen*, 250 Mich. App 322, 327; 646 NW2d 190 (2002). The determination whether a jury instruction is applicable to the facts of a case lies in the sound discretion of the trial court, and the instructions must be reviewed in their entirety. *Id.* There is no error requiring reversal if, on balance, the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.*

Defendant did not present a formal intoxication defense. However, during the presentation of his case, he offered evidence that he was in the habit of binging on cocaine and alcohol and was generally delusional and paranoid during the time the crime occurred. Because the issue of intoxication was peripherally placed before the jury, the prosecution requested an instruction with respect to voluntary intoxication. Defense counsel objected, arguing that defendant was not asserting an intoxication defense. The trial court instructed:

> Now you have heard some evidence about ingestion of drugs and alcohol. It is not a defense to any crime that the defendant was at that time under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor or drug including a controlled substance. Other substance are [sic] compound or a combination of alcoholic liquor, drug or other substance or compound.

The instruction was based on MCL 768.37, which removes voluntary intoxication as a defense for most crimes. However, it is undisputed that MCL 768.37 is not applicable to defendant's case because the offense preceded the statute's effective date of September 1, 2002. Before September 1, 2002, voluntary intoxication was a defense to specific intent crimes. *People v. King*, 210 Mich.App 425, 427; 534 NW2d 534 (1995). Because first-degree home invasion is a specific intent crime, *see People v. Carpenter*, 464 Mich. 223, 225; 627 NW2d 276 (2001), the defense could have been pursued by defendant to the extent it was applicable. Although defendant did not pursue the defense, the trial court elected to give the challenged instruction because there was evidence of intoxication on the record. The trial court indicated that it was providing the instruction in its discretion because it wanted to instruct on the law to avoid jury confusion and because the instruction fit the circumstances of the case.

On appeal, defendant argues that the trial court should not have given an instruction on voluntary intoxication because he did not present an intoxication defense and the instruction given did not properly reflect the law applicable to his case. We agree, but conclude that defendant's case was fully and fairly presented to the jury, and reversal is not required. The given instruction, while inaccurately reflecting the applicable law, accurately reflected the facts of the case, specifically that voluntary intoxication was not a defense. Defendant did not pursue a voluntary intoxication defense, and the defense was not supported by the evidence. "A defense of intoxication is only proper if the facts of the case could allow the jury to conclude that the defendant's intoxication was so great that the defendant was unable to form the necessary intent." *People v. Mills*, 450 Mich. 61, 82; 537 NW2d 909, *modified on other grounds* 450 Mich. 1212; 539 NW2d 504 (1995). In this case, there was no specific evidence that, on the night of the crime, defendant was intoxicated at all, much less intoxicated to the point that he was unable to form the necessary intent. Thus, intoxication was, in fact, not a defense in defendant's case. On balance, the

> instructions fairly presented the issues to be tried and sufficiently protected defendant's rights. *Heikkinen*, *supra*.
>
> We additionally conclude that, even if the instruction was erroneous, reversal is not required. A preserved nonconstitutional error does not require reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. *People v. Lukity*, 460 Mich. 484, 495-496; 596 NW2d 607 (1999). Here, it is not more probable than not that any instructional error was outcome determinative. The defense of voluntary intoxication was not before the jury for consideration, defendant never argued that he did not have the specific intent to commit the crime, and the evidence against defendant, including his confession, was overwhelming.

*People v. Vendeville*, No. 248161, slip op. at 4-5.

Respondent contends that the trial court's jury instruction raised an issue of state law that is not cognizable on federal habeas review. The court agrees. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

> The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process", *Cupp v. Naughten*, [414 U.S. 141 at 147], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.*, at 146.

*Id.* "The strong interest in preserving the finality of judgments, as well as the interest in orderly trial procedure, must be overcome before collateral relief can be justified." *Id.* at n. 13 (internal citations omitted). In determining whether a particular instruction violates due process, the instruction cannot be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72.

Judging this instruction in the context of the instructions as a whole and the trial record, it appears to the court that this instruction was a nullity, i.e., it precluded the jury from

considering an intoxication defense which petitioner neither raised nor argued, and which was not supported by the evidence. Under these circumstances, the instruction cannot be said to have "so infected the entire trial that the resulting conviction violates due process." *Henderson*, 431 U.S. at 154, quoting *Cupp*, 414 U.S. at 147.

Accordingly, petitioner's claim should be denied.

### V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: May 19, 2009                               /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).