UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

**FILED - GR**

June 3, 2009 10:34 AM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___mrs /

RICHARD ROY VENDEVILLE,

    Petitioner,

Case No. 4:06-cv-89

Hon. Gordon J. Quist /β

v.

CINDI S. CURTIN,

    Respondent.

_____/

Richard Roy Vendeville
No. 206993
For Petitioner
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, Michigan 48880

Mike Cox
Attorney General
For Respondent
P.O. Box 30217
Lansing, Michigan 48909

## PETITIONER'S OBJECTIONS TO
## MAGISTRATE'S REPORT AND RECOMMENDATION

Petitioner Richard Roy Vendeville, in pro-se, (herein after referred to as "Petitioner"), objects to the Magistrate's Report and Recommendation for the reasons set forth in his Memorandum of Law in Support of Petition for Writ of Habeas Corpus, which was previously filed in this case. A copy of that Memorandum of Law is part of this Court's file.

In addition, Petitioner specifically objects to the following aspects of the Magistrate's Report and Recommendation:

## I.   Controlling or Most Appropriate Authority

By operation of section 636(b)(1), any party that disagrees with the magistrate's recommendation :may serve and file written objections" to the magistrate's report, and thereby obtain de novo review by the district court judge of those portions of the report to which objections are made. 28 U.S.C. section 636(b)(1) (1982). In the interest of judicial economy, this circuit established in United States v Walters, 638 F.2d 947, 949-950 (6th Cir. 1981), that a party must file objections with the district court to avoid waiving appellate review. See also Thomas v Arn, 728 F.2d 813 (6th Cir. 1984), aff'd 474 U.S. 140 (1985); Patterson v Mintez, 717 F.2d 284, 286 (6th Cir. 1983). By operation of this supervisory rule, only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have. See Thomas v Arn, 474 U.S. 140 (1985); Accord Wright v Holbrook, 794 F.2d 1152, 1154-1155 (6th Cir. 1986); See also Wilson v McMaken, 786 F.2d 216, 220 (6th Cir. 1986).

Smith v Detroit Federation of Teachers, Local 231, et. al., 829 F.2d 1370, 1373 (6th Cir. 1987).

"The requirement of specific objection is procedural bar rather than jurisdiction and may therefore be excused, "although" a concise statement of specific holdings of the magistrate judge to which exception is taken is the preferred and safer course." Vaughn v Lawrence-Power Sys., 269 F.3d 703, 714 (6th Cir. 2001).

## II.   OBJECTIONS

I.   THE MAGISTRATE ERRONEOUSLY CONCLUDED THAT THE STATE TRIAL COURT JUDGE PROPERLY EXERCISED ITS DISCRETION IN ORDERING PETITIONER TO BE SHACKLED DURING TRIAL, AND LIKEWISE ERRED IN FAILING TO AFFORD PETITIONER A "FULL AND FAIR" OPPORTUNITY TO BOLSTER HIS CLAIM OF CONSTITUTIONAL ERROR RELATED TO SHACKLING.

As the Magistrate Judge concluded, "the law has long forbidden routine use of visible shackles during the guilt phase (of a criminal trial); it permits a State to shackle a criminal defendant only in the presence of a special need. Deck v Missouri, 544 U.S. 622, 626 (2005). Historically, courts facing a decision to shackle a criminal defendant at trial emphasized the importance of giving effect to three fundamental principles. Id., at 630.

2

First, the visual shackling undermines the presumption of innocence. Id. Second, shackles can interfere with the accused's constitutional right to a meaningful defense, by interfering with a criminal defendant's ability to communicate with counsel. Id. at 631. Third, the routine use of shackles in the presence of the jury would undermine the courtroom's formal dignity and decorum, which includes the respectful treatment of defendants. Id." (See Magistrate's Report and Recommendation at pp. 7-8).

Here, Petitioner objects to the Magistrate's Report and Recommendation. None of the alleged activities cited by the Magistrate occurred at trial. In fact, Petitioner conducted himself in a dignified and orderly manner. More importantly, Petitioner contends that the second factor of Deck v Missouri, supra, (i.e., whether the shackling of a petitioner deprived him of his ability to communicate with counsel) in and of itself, requires Habeas Corpus relief or an evidentiary hearing. The Magistrate failed to analyze and determine whether the use of shackles interfered with Petitioner's ability to communicate with counsel. Indeed, the Magistrate simply glossed over this critical consideration. Petitioner being shackled grossly interfered with his ability to communicate with counsel; particularly, where, as here, Petitioner's seating arrangement in the courtroom was in close proximity of the prosecutor's table, and Petitioner did not feel free to orally and openly speak with his attorney. At the same time, in being shackled Petitioner could not write or put down his thoughts and concerns on paper. In effect, Petitioner was muzzled and hindered in his ability to openly and freely communicate with his attorney, and assist in his defense. It's telling that Petitioner was repeatedly admonished during pretrial and trial proceedings by the trial court judge not to interrupt or speak to the court. Instead, Petitioner was instructed to speak through his attorney. (See for example, Motion Transcripts (4/4/03),

3

at pp. 26-31).

Given the fundamental importance of the question of whether Petitioner was hindered in his ability to communicate with counsel, an evidentiary hearing is warranted because Petitioner requested a remand in the Court of Appeals and Michigan Supreme Court attempting to develop a record on his claim that jurors were exposed to him in shackles, and that he could not communicate with his attorney. (See Magistrate's Report and Recommendation at p. 3, citing Petitioner's attempt for a remand). Hence, Petitioner submits that the Magistrate Judge erred in failing to address his request for an evidentiary hearing contained within the body of his Memorandum of Law in Support of Petition for Writ of Habeas Corpus (see page 6, therein, citing Townsend v Sain, 372 U.S. 293 (1963)). The United States Supreme Court prefers evidentiary hearings as the best way of determining disputed facts relevant to appeals. Blackledge v Allison, 431 U.S. 63, 7273 (1977); see also Filippins v United States, 747 F.2d 1089, 1091-1092 (6th Cir. 1984). Petitioner tried to develop the facts in the state courts, but his request for an evidentiary hearing were denied. The state courts cannot shield their rulings from federal court review by the expediency of denying an evidentiary hearing. See Medina v Barnes, 71 F.3d 363 (10th Cir. 1995); Rhoden v Rowland, 10 F.3d 1457, 1460 (9th Cir. 1993) In Goodwin v Johnson, 132 F.3d 162 (5th Cir. 1998), the Court held:

> "When there is a factual dispute that, if resolved in the petitioner's favor, would entitled him to relief and the state has not afforded the petitioner a full and fair hearing, a federal habeas corpus petitioner is entitled to discovery and an evidentiary hearing."

The 1996 changes in 28 U.S.C. section 2254(e) do not change the requirement of an evidentiary hearing. That section applied where the state courts have a hearing and make findings of fact, which did not occur here

4

as shown by the disputed facts. Williams v Taylor, 529 U.S. 420 (2000). Where the Petitioner was denied an evidentiary hearing in state court through no fault of his own, the federal court should conduct an evidentiary hearing. Williams v Taylor, supra.

Petitioner submits that this Court does not have an adequate factual basis to determine whether: i) the jailer's naked allegations of fact were supported by prima-facie evidence in the record; ii) the Petitioner was hindered in his ability to openly and freely communicate with his attorney at trial; and iii) jurors were exposed to Petitioner in shackles, hence mooting the offer to accommodate Petitioner.

Therefore, Petitioner respectfully contends that the Magistrate erred in concluding that, "The trial court properly exercised its discretion by taking into account potential security problems and petitioner's risk of escape in reaching its decision to require belly chains, handcuffs and leg irons.... The extensive evidence indicated that Petitioner's past institutional misconduct indicated that he posed both an extreme risk of escaping from custody and injuring other people." (See Magistrate's Report and Recommendation at pp. 8-9). Based on this record, the Petitioner is entitled to Habeas Corpus relief or an evidentiary hearing where the Magistrate glossed over material facts, as well as the request for an evidentiary hearing.

Petitioner also objects to the Magistrate's conclusion that "... it appears to the Court that Petitioner waived this claim. Although the trial court offered to shield the bottom of the counsel's table so that the jury could not see Petitioner's leg restraints, Petitioner informed his attorney and advised the court that he did not want this accommodation.... In addition, Petitioner insisted on being tried in 'jail orange' clothing." (See Magistrate's Report and Recommendation at p. 9). Again, the inexplicable

5

failure of the state courts to grant an evidentiary hearing contributed to the Magistrate reaching this finding, because had Petitioner been afforded a hearing, he could have proven that the jurors were already exposed to him in shackles, etc. There is a strong presumption against waiver of fundamental constitutional rights. See generally, Johnson v Zerbst, 304 U.S. 458 (1938). Under the circumstance of this case, Petitioner's alleged waiver was not made with eyes wide open, knowingly, intelligently, and voluntarily. Indeed, Petitioner thought that by the jurors already being exposed to him in shackles would not be cured by accommodating him in court and providing the jurors with a cautionary instruction. Although a waiver may be implied and not expressed, there must be evidence in the record to support that implication. The Sixth Circuit's statement in Evans v United States, 284 F.2d 393 (6th Cir. 1960) is directly applicable: "the record does not show that defendant knew of or was advised of his rights. In order to constitute a waiver, there must be a voluntary relinquishment of a known right." Id. Contrary to the Magistrate's solitary construction, there is nothing of record to conclude that Petitioner was adequately advised of his fundamental rights, and voluntarily waived them. Again, an evidentiary is necessary to fully and fairly consider this aspect of the claimed waiver for the state courts did not make an on the record waiver finding, and the state court hearing itself never addressed the Petitioner's concerns of being exposed to jurors in shackles, along with the seating arrangement which was totally ineffective to protect Petitioner against exposure.

In short, the Magistrate was palpably wrong in concluding, "The Michigan Court of Appeals decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the

6

facts in light of the evidence presented. 28 U.S.C. section 2254(d)." (See Magistrate's Report and Recommendation at p. 9). Under Deck v Missouri, supra and Rumsveld v Birkett, 404 F.3d 1006, 1015, 1017 (6th Cir. 2005), the Magistrate erred, and the state court's decisions cannot pass constitutional scrutiny.

For these reasons, Petitioner respectfully submits that the Court should overrule and reject the Magistrate's Report and Recommendation in whole or in part.

     II.    THE MAGISTRATE ERRONEOUSLY CONCLUDED THAT REFERENCES TO SIXTEEN TO TWENTY UNCHARGED CRIMES DOES NOT ENTITLE PETITIONER TO HABEAS CORPUS RELIEF BECAUSE THIS CLAIM INVOLVES A QUESTION OF STATE LAW THAT IS NOT COGNIZABLE ON FEDERAL HABEAS REVIEW, AND BECAUSE NO SUPREME COURT DECISION PROHIBITED ITS USE.

The Magistrate first concludes that Petitioner's claim involves a question of state law that is not cognizable on federal habeas review. (See Magistrate's Report and Recommendation at p. 11). The Magistrate points out that state court rulings on the admission of evidence are not subject to federal habeas corpus review unless the error denied Petitioner a fundamentally fair trial, and then goes on to find that there is no clearly established precedent which holds that a state violates due process by permitting evidence in the form of other bad acts evidence. (See Magistrate's Report and Recommendation at pp. 11-12). In so concluding, the Magistrate ignores the plain language Donnelly v DeChristoforo, 416 U.S. 637, 645 (1974), finding that trial error under state law may rise to the level of a due process violation if it is "so fundamentally unfair as to deny him due process." Id. In fact, federal habeas corpus relief was specifically granted to a Kentucky state prisoner predicated on a prosecutor's introduction of evidence that the petitioner who was charged with burglary was involved in all kinds of burglaries around the county. See Kincade v Sparkman, 1999 WL 253105 (6th Cir. (Ky.))) (citing

7

Donnelly, supra).

Here, Petitioner's case is far more egregious than the facts presented in Kincade, supra, where well-over a dozen references were made in his case to burglaries in the area, and were purposely injected before his jury under the guise of rebuttal. In any event, even if there was no clearly established U.S. Supreme Court precedent that controlled the subject, Petitioner contends that Sixth Circuit precedent condemned it, and strict adherence to 28 U.S.C. 2254, and disregarding Sixth Circuit holdings, would render nugatory the rule of stare decisis, and the AEDPA would be unconstitutional on its face, and as applied. See e.g. Crater v Galaza, 508 F.3d 1261 (11th Cir. 2008) (ruling AEDPA could be unconstitutional and violate the rule of stare decisis in Congress requiring a federal appellate court to disregard its own precedent, etc.).

In short, this Court should find that the improper use of other bad acts evidence violates due process, and even if no Supreme Court precedent controlled, the AEDPA would be unconstitutionally as applied by the Magistrate.

III.    THE MAGISTRATE ERRED IN CONCLUDING THAT PETITIONER'S DUE PROCESS BASED CLAIM CENTERED ON INSTRUCTIONAL ERROR WAS SOLELY A MATTER OF STATE LAW, AND IN FAILING TO ADDRESS PETITIONER'S PRIMA-FACIE EX POST FACTO CLAIM.

The Magistrate first concludes that Petitioner's claim involves a question of state law that is not cognizable on federal habeas review. (See Magistrate's Report and Recommendation at p. 14). The Magistrate concedes that the Michigan Court of Appeals correctly determined that the statutory enactment of MCL 768.37 could not be applied to Petitioner because the offense preceded the statute's effective date of September 1, 2002. Yet, the Magistrate glossed over Petitioner's argument in his Memorandum of Law in Support of Petitioner for Writ of Habeas Corpus (at p. 18), that application of the statute which

8

did not become final until after Petitioner's offense date was impermissible under the ex post facto clause. As the Court said in <u>Landgraf v USI Film Products</u>, 114 S.Ct. 1483 (1994):

> "The presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." 114 S.Ct. at 1497.

> "The presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." 114 S.Ct. at 1500.

At the time of Petitioner's conviction offense, the prohibition of MCL 768.37 was not in place. Therefore, it cannot and should not have had that effect in Petitioner's trial.

To illustrate the principle, the <u>Landgraf</u> Court referred to <u>Chew-Heong v United States</u>, 112 U.S. 536 (1884). A new statute prohibited Chinese laborers who were in the U.S., and then left, from reentering the U.S., unless at the time they left they acquired a certificate permitting reentry. When Chew Heong left the U.S., that requirement did not exist, and he did not seek any certificate. The Supreme Court held that the new requirement could not constitutionally be applied to Heong, because the requirement was not in place at the time he failed to acquire the certificate.

Here, it was explicitly held by the state Court of Appeals that MCL 768.37's statutory prohibition did not apply to Petitioner's case. Yet, the the Court of Appeals failed to grant a new trial despite an abundance of evidence that Petitioner was indeed highly intoxicated at the time of the offense, i.e. binging on cocaine and alcohol, and was generally delusional and paranoid.

The issue of the failure to properly instruct the jury in accordance with Michigan law and precedent has again lend itself to the Magistrate's penchant for reframing the issue or glossing over it. Petitioner has not

9

contended that said defective jury instruction was merely a matter of state
law. Instead, the facts and circumstances of this case show that a flagrant
ex post facto violation occurred, and operated to deprive Petitioner of his
fundamental due process clause right to a fair trial and properly instructed
jury. Specifically, the issue in this matter is Petitioner's right to a
properly instructed jury. A defendant has the fundamental right to have a
properly instructed jury pass upon the evidence. Morrissette v United States,
342 U.S. 246 (1952). On the facts of this case that right was violated when
the trial court took away a fundamental element which the jury could consider
in determining whether he should be found guilty of a specific intent crime.
It is incumbent upon the trial court to give an adequate instruction on all
essential elements that would permit the jury to understand the law, what
it is they are to decide, and that "fairly and fully" present's the issues
in a clear and intelligent matter from both the prosecution's side of the
case as well as the defendant's. Victor v Nebraska, 511 U.S. 1 (1994). Although
errors in instructing the jury do not always rise to a constitutional level,
if the error goes to the heart of the ... defense it can infringe upon
defendant's rights to due process and jury trial. Miller v South-Dakaota,
338 NW2d 673 (1983). The result of the trial court's instructions operated
to usurp the role of the jury, and abridge Petitioner's constitutional rights.
Barker v Yukins, 199 F.3d 867, 874 (6th Cir. 1999).

In short, the trial court took away the jury's power of nullification
by retroactive application of an inapplicable statutory prohibition. Yet,
the jury has an inherent right to dispense mercy by returning a verdict less
than is warranted by the evidence. See e.g., People v Vaughn, 409 Mich 463
(1980); People v Lewis, 415 Mich 443 (1982).

## CONCLUSION-AND-RELIEF-REQUESTED

Petitioner respectfully request that this Honorable Court overrule the Magistrate's Report and Recommendation, grant Habeas Corpus relief, or order an evidentiary hearing.

Dated: 6/1/09

Respectfully submitted,    6-1-2009

Richard Roy Vendeville, No. 206993
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, Michigan 48880